**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **CASSANDRA LAMPKIN** | § | |
| | § | |
| **VS.** | § | **NO. A-07-CA-148 LY** |
| | § | |
| **PREMIEANT, INC., ET AL.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the United States District
Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the
United States District Court for the Western District of Texas, Local Rules for the Assignment of
Duties to United States Magistrate Judges.  Before the Court is Defendants' Motion for Summary
Judgment and Brief in Support (Clerk's  Doc. No. 19).  On May 14, 2007, Judge Yeakel referred all
dispositive motions to the Court for a Report and Recommendation.

**I.  STANDARD OF REVIEW**

Premieant and a number of individual employees – Kathy Griffith, Barbara Bowman, Steven
Wirth, Dennis Latimer, Florence Turay, Nicola Alleyne, Lisa Kim, and Does 1-10 – have moved for
summary judgment on Lampkin's claims against them.[1]

---

[1] There are some housekeeping matters that need to be addressed at the outset. First, the
Court will refer to the defendants collectively as "Premieant."  Also, Lampkin, who is proceeding
*pro se*, has mistakenly styled her response to Premieant's motion for summary judgment as
"Plaintiff's motion for summary judgment."  Plaintiff's "motion" cannot credibly be deemed such
and there is no indication throughout that she intended to move for summary judgment rather than
merely respond to Premieant's motion. *See* Clerk's Doc. No. 20 (see, especially, her conclusion at
p. 4).  Premieant, out of an abundance of caution has filed a Response to Lampkin's "motion." *See*
Clerk's Doc. No. 21.  The Court just notes that the issue is moot: the only motion before the Court
is Premieant's motion for summary judgment.  In the interest of dotting all "I"s and crossing all "T"s,

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

---

the Court will RECOMMEND that Lampkin's Motion for Summary Judgment be DENIED for failure to conform even minimally to the requirements of the rules of civil procedure. *See* FED. R. CIV. P. 56(c).

2

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## II.  BACKGROUND

In light of the summary judgment standard of review, the following facts are viewed in the light most favorable to the non-movant. *Ragas*, 136 F.3d at 458.

Lampkin's claim essentially boils down to this: she was retaliated against for reporting to the relevant state authorities abuse taking place at Premieant, and for taking FMLA leave in 2006 and 2007. Lampkin was hired by Premieant in April 2005 as a residential assistant to help out with so-called "consumers," who perhaps less euphemistically could be called group home residents who are mentally retarded or severely disabled.

The events that precipitated this lawsuit against Premieant were, roughly, these:  in December 2005 and again in February 2006, Lampkin anonymously reported to the Texas Department of Aging and Disability Services (TDADS) what she felt was abuse of a consumer (Consumer A).  In April

2006, Lampkin was suspended from work after a meeting with Nicky Alleyne, a supervisor at Premieant, and Florence Turay, a vice-president at Premieant, *see* Premieant's Motion, Exh.5 and Exh. B, for what Lampkin claims were pretextual reasons (*e.g.*, allegedly calling a co-worker, Vicky Holt, a "bitch," excessive personal use of the telephone); the real reason was her decision to report abuse to TDADS.  Later that same year, in July, Lampkin made another complaint to TDADS that Holt had hit a consumer (Consumer B) in the arm.

In September 2006, Consumer B's mother met with Turay because she felt that her daughter was caught in the middle of an internecine personal conflict between Holt and Lampkin.  Plaintiff contends that she was simply doing her job and that Holt had a workplace vendetta against her. Turay, because she felt that she was unable to determine who was in the wrong, made a decision to transfer both Lampkin and Holt from their current facility, Maryswood, to separate locations. Lampkin told Turay that she needed to consider the transfer.

That same month, Lampkin took vacation from September 18–25.  However, on the last day of her scheduled vacation she sent Premieant a letter stating that she was ill, and the next day her physician followed up with a fax stating that Lampkin would be out of work indefinitely.  Lampkin was given 12 weeks of Family and Medical Leave Act (FMLA) leave, which ran until December 31, 2006.  In January 2007, Lampkin was granted a second 12 week period of FMLA leave but was told that she had to provide evidence of a serious medical condition as required by the statute.   In February, Lampkin provided Premieant with a note from her doctor that stated she suffered from depression; however, the note also stated that she had been able to work since November 6, 2006. Premieant then wrote Lampkin telling her that she had five days to report to work otherwise her job would be deemed abandoned. Lampkin did not report to work.

4

On January 30, 2007, Lampkin filed a lawsuit alleging FMLA and Texas Health & Safety Code claims in Texas state district court. Premieant removed the case to federal court and now moves for summary judgment on all of Lampkin's claims.

### III. ANALYSIS

Premieant first asks that a number of the defendants that have been sued in their individual capacity be granted summary judgment based on Lampkin's deposition testimony. At her deposition, Lampkin admitted that, other than determining if she (Lampkin) had reported to work at Silverway, she could not point to any actions Kathy Griffith took to retaliate against her. *See* Defendants' Motion, Exh. A, Lampkin's Deposition, at p. 118-20. Moreover, she admitted that she "didn't even know [Barbara Bowman]" and that when her "attorney drawed up [*sic*] that petition he included all of them" (*i.e.*, upper-level management and the owners of Premieant). *Id*. at 121. The same – that Lampkin does not know him – holds true for Steven Wirth. *Id*. at 122. Finally, she stated that she was suing Dennis Latimer even though "I can't say what he did." *Id*. at 124.

The Court agrees with Premieant that these admissions support the dismissal of Lampkin's claims against Griffith, Bowman, Wirth, and Latimer. A plaintiff cannot bring a claim, concede that she does not know the basis for it (and state that that's simply how her attorney drafted the complaint), and expect it to be sustained to see trial. *See Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988) (dismissing retaliation claim as frivolous, because "no factual basis for mere conclusory allegation" existed); *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988) (dismissing retaliation claim as frivolous because "the appellant has advanced nothing but the claim itself without the slightest support of any factual allegations"). Therefore, the Court RECOMMENDS that Griffith, Bowman, Wirth, and Latimer's motions for summary judgment be GRANTED.

A.      **Lampkin's FMLA Claim**

It is not readily ascertainable what exactly constitutes the basis of Lampkin's alleged FMLA violation.  In her complaint, Lampkin contends that Premieant (1) "used improper procedures" when it asked Plaintiff to apply for leave; (2) has "refused to properly send proper documents to Plaintiff regarding" leave; (3) has "untruthfully denied receiving things which [Lampkin] has sent [Premieant]" regarding leave; (4) has asked Lampkin to resubmit documents pertaining to leave that she already submitted and then refused her request to submit the documents in writing; and (although this accusation is far from lucid) (5) has refused to pay Lampkin's medical bills which resulted from injuries sustained at work from Premieant's retaliation.

Under the FMLA, an eligible employee is entitled to take up to 12 work weeks of leave in a 12-month period when, for example, the employee has a serious health condition that makes her unable to perform the duties of her position.  29 U.S.C. § 2612(a)(1)(D); *Bocalbos v. Nat''l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998).  After a qualifying absence, the employer must restore the employee to the same position previously held by the employee before taking leave under the FMLA or a comparable position, with equivalent pay, benefits, and working conditions.  29 U.S.C. § 2614(a)(1); *Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999). These comprise the prescriptive or substantive FMLA rights; claims for violations of these rights invoke entitlement or interference theories and are brought under § 2615(a)(1).  The proscriptive FMLA rights include an employee's right not to be discriminated or retaliated against for having exercised the right to take FMLA leave.  Claims for violations of these rights are brought under § 2615(a)(2).  *Bocalbos*, 162 F.3d at 383.  These proscriptive FMLA provisions create a cause of action analogous to the actions

for discrimination and for retaliation that are found in Title VII and the other discrimination statutes. *Healy v. Alliance Compressor, LLC*, 391 F.3d 644, 649 (5th Cir. 2004).

Lampkin's FMLA claim, whether of the proscriptive or prescriptive variety (it is not clear), must fail based on the factual record.  The summary judgment evidence shows that Lampkin asked for, and was granted, vacation from September 18, 2006, through September 25, 2006.  *See* Defendants' Motion, Exh. A, Lampkin Deposition at 170.  On September 26, 2006, Lampkin presented Premieant with a note from her doctor stating that she was excused from work for an indeterminate amount of time.  *Id*. at 173.  She was then granted her statutorily-mandated 12 weeks of leave that ran until December 31, 2006.  *Id*. at 176.  Apparently, Lampkin did not return to work in January (it is not clear whether she asked for additional time off).  Regardless, Theresa Scheer, a Premieant employee, notified Lampkin, in a letter dated January 24, 2007, that she was eligible for an additional 12 weeks of FMLA leave – the Court presumes that Premieant uses the "calendar year" method for determining FMLA leave, *see* 29 C.F.R. § 825.200(b) – but that she had to provide, by February 9, 2007 medical certification of a serious medical condition for this next round of FMLA leave.  *See id*. Exh 10.  Lampkin provided another note from her doctor on February 9, 2007 that indicated her serious medical condition was anxiety/depression.  *Id*. at Lampkin Deposition at 177.  However, the doctor's note, signed by the doctor on November 6, 2006,  noted that Lampkin was able to work as of that date (11/6/06).  *Id*. at 178.  At her deposition, Lampkin testified that her doctor answered the question in this manner because she was working a second job with a private client in a home health care situation.  *Id*. at 178.  Lampkin testified that she did not tell Premieant about her putative ability to work – since November 6, 2006 – because of the "hostile environment, the talk, the conspiracy" at Premieant.  *Id*. at 180.

Once Premieant was presented with the doctor's note indicating that Lampkin had been able to work since November 6, 2006, Scheer, in a letter dated February 21, 2007, told Lampkin that because she had been able to work for a number of months now, she was expected to report to work on February 26, 2007, and if she did not do so Premieant would consider her employment voluntarily terminated. *Id*. at 184.  Lampkin did not report to work on February 26, 2007, because she "did not want to go back into their work environment." *Id*. at 186.

To establish a prima facie case for discrimination or retaliation under the FMLA, the plaintiff must demonstrate that: (1) she is protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave. *Bocalbos*, 162 F.3d at 383.  Lampkin cannot establish the third element of her claim: that any adverse decision (presumably the termination of her employment) was made because of her request for leave (she makes no attempt to prove it through alternative 3a).  In fact, the factual record shows that Premieant granted her a second round of FMLA leave starting in January 2007 *and*, once they discovered that Lampkin had in fact been less than forthright about her ability to work (dating back several months), offered her a substantially similar position (in fact identical except for the location). *Chaffin*, 179 F.3d at 319.  It was Lampkin, not Premieant, who ended the employment relationship.  In other words, any attempt to plead an FMLA claim under these facts is legally incoherent because the facts demonstrate indisputably that Lampkin was able to return to work and her failure to do so was the cause of her termination.  Other than Lampkin's speculation, which is not summary judgment evidence, there is no evidence to dispute these facts.  The Court therefore

RECOMMENDS that Premieant's motion for summary judgment be GRANTED as to Plaintiff's

FMLA claim.

**B.      Lampkin's Texas Health & Safety Code Claim**

Lampkin claims that she was retaliated against in a variety of ways by Premieant after she

reported to and cooperated with TDADS in their investigations of her "whistle-blowing" actions for

abuses she believed were taking place at Premieant.   This was, she contends, in violation of

§252.132 of Texas Safety & Health Code.   The code provides in the relevant part:

> (b) An employee has a cause of action against a facility, the owner of the facility, or
> another employee of the facility that suspends or terminates the employment of the
> employee or otherwise disciplines, discriminates against, or retaliates against the
> employee for:
>
>> (1) reporting to the employee's supervisor, an administrator of the
>> facility, a state regulatory agency, or a law enforcement agency a
>> violation of law, including a violation of this chapter or a rule adopted
>> under this chapter; or
>>
>> (2) initiating or cooperating in any investigation or proceeding of a
>> governmental entity relating to the care, services, or conditions at the
>> facility.

TEX. HEALTH & SAFETY CODE ANN. § 252.132.  This portion of the Code prohibits employers from

retaliating against employees who report a violation of the law to their supervisor, administrator of

the institution, state regulatory agency, or law enforcement agency and provides a cause of action

to employees who are retaliated against.  *See id; see also Town Hall Estates-Whitney, Inc. v. Winters*,

220 S.W.3d 71, 76 (Tex.App. – Waco 2007, no pet.).  Once an employer submits evidence that it

would have taken adverse action in the absence of the report, the rebuttable presumption disappears

and the plaintiff must submit evidence of causation.  *Id*. at 81.  The plaintiff is then required to prove

by a preponderance of the evidence that the defendant would not have terminated the plaintiff's

employment when they did "but for" her report.[2]  The Fifth Circuit, in interpreting the Texas Public

Whistleblower Act – a piece of legislation substantially similar to the provision of the Health &

Safety Code at issue here – held that an employer's adverse action against an employee must cause

plaintiff serious, objective, tangible harm.  *See Serna v. City of San Antonio*, 244 F.3d 479, 482-83

(5th Cir.2001); *see also City of Austin Police Dep't v. Brown*, 96 S.W.3d 588, 602 (Tex. App. –

Austin, 2002, rev. dismissed).

In its motion, Premiant helpfully separates each of the incidents Lampkin contended, at her

deposition, were actionable retaliation – this is helpful of course because Lampkin's Response is

largely incoherent.  While the Court appreciates Premieant's diligence, the Court cannot help but

note that many of Lampkin's claims are legally preposterous.  For example, she contends that Turay

"rolled her eyes" at her and "looked at [her] real mean," and that Kim looked out the window while

Lampkin was talking.  *See* Defendant's Motion, Lampkin Deposition at 133.  Lampkin complains

numerous times of "gossip" as retaliation, *see, e.g., id.* at 55, and at one point invokes a quadruple

hearsay statement as an example of actionable complaint.  *Id.* at 47 (answering "yes" in response to

"Florence McKinney told you that Vicky Holt's daughter told her that Vicky Holt told her daughter

---

[2] The Court can find no reported cases specifically dealing with § 252.132 of the code, but notes that Texas court have employed this standard to nearly identical sections of the Health & Safety Code (§§ 161.134 and 242.133).  *See Winters*, 220 S.W.3d at 76 (applying "but for" causation standard to § 242.133 which prohibits retaliation against nursing home employees who report law violations); *see Tomhave v. Oaks Psychiatric Hosp.*, 82 S.W.3d 381, 385 (Tex.App.-Austin 2002, pet. denied), overruled on other grounds by *Binur v. Jacobo*, 135 S.W.3d 646 (Tex.2004) (applying "but for" causation standard to § 161.134 which provides for a retaliation cause of action for employees of a hospital, mental health facility, or treatment facility); *accord Senior Living Properties, LLC v. Cole*, No. 10-06-00227-CV, 2007 WL 2729567, at *2 (Tex. App. – Waco, Sep. 19, 2007) (acknowledging this trend in Texas cases regarding Health & Safety Code).  Therefore, this Court will apply the "but for" causation standard here.

that Nicki Alleyne had told Vicky Holt that [Lampkin reported allegations of abuse to the TDADS].").[3] Lampkin also complains that when Turay sent her a letter inquiring whether she would be reporting to work at her new location, and cited Lampkin's "family concerns" as the reason for her delay in notifying Premieant of her intentions, that this constituted retaliation; in other words, Turay's putatively inaccurate statement regarding Lampkin's non-existent family concerns was retaliatory. *Id*. at 36; Exh 15.

The bulk of Lampkin's complaints, then, are at best puzzling.[4]  Gossip and hand-me-down statements are not stuff of valid legal claims.  That said, Lampkin does complain of a few episodes that call for at least a cursory analysis.  In April 2006, Lampkin was suspended for three days for various infractions (*e.g.,* excessive personal use of the telephone, use of the facility's clothes washer and dryer for personal purposes).  Lampkin contends that she was in fact suspended for her reports of abuses to TDADS in December 2005 and February 2006.  Premieant has done its job – rebutting

---

[3] In other words, Nicky Alleyne told Vicky Holt, who relayed to her daughter, who in turn told Florence McKinney, who told Lampkin the relevant statement.

[4] Lampkin also complains of retaliation when Turay presented to Kim a statement that Lampkin had coached Consumer B to make up allegations of abuse by Holt.  However, as Premieant points out, the statement, which was based on a statement by at least one other employee notifying Turay that Consumer B had told her that Lampkin had coached her into fabricating the allegation, was simply repeating information.  This claim, like most of the others, is frivolous.  In any event, Plaintiff provides no evidence that the statement would not have been presented to Kim but for her allegations of abuse. *See Winters*, 220 S.W.3d at 76.

Related to this incident is Lampkin's complaint that Turay falsely told Consumer B's mother that Lampkin had coached her daughter into lying about abuse.  *See* Premieant's Motion, Exh. A, Lampkin Deposition at 124-25.  Lampkin testified that Consumer B's mother told her that Turay told her (Consumer B's mother) about the statement. *Id*.  While Turay's statement could be construed as an admission of a party opponent, *see* FED. R. EVID. 801(d)(2) (laying out requisites for admission of party opponent's out-of-court statements), Lampkin provides no hearsay exception for the second rung of this double hearsay statement.  Therefore, it is inadmissible as summary judgment evidence. *See Barry v. Simmons Airlines, Inc.*, 239 F.3d 366 (5th Cir. 2000) (excluding double hearsay statement even where one of the declarants was a party opponent).

the presumption – by presenting evidence that it would have taken the action it did anyway, and Lampkin has responded by submitting McKinney's affidavit stating that she acted in a professional manner during the relevant time period.   Turay's competing affidavit states that she suspended Lampkin because of a statement provided by Holt that Lampkin was flouting workplace rules. However, what cements the argument is that Lampkin testified in her deposition that in April 2006 Turay did not know that she (Lampkin) had reported the abuse to TDADS (indeed, she testified that no one knew other than her fellow whistle-blower).  *Id.* at 91.   Given Lampkin's version of the events, it simply cannot be the case that she was retaliated against for reporting abuses because Turay, by her own admission, could not have acted on those reports of abuse.  *See Winters*, 220 S.W.3d at 76 (applying "but for" causation standard to § 242.133 which prohibits retaliation against nursing home employees who report law violations).

The only other retaliation claim requiring examination in any detail is Lampkin's contention that she was transferred from the Maryswood location because of her reports of abuse.  As an initial matter, Lampkin's claim cannot even get out of the gate.  She was transferred to a position with the same title, same pay, same benefits, and same schedule.  That is to say, Lampkin must first show how the transfer was an adverse employment action.   *See Serna*, 244 F.3d at 482-83 (in whistle-blower case, transfer without cut in pay or benefits may be adverse action but plaintiff must show transfer caused plaintiff serious, objective, tangible harm).[5]   Since Lampkin presents no

_____

[5] The Texas Supreme Court has recently stated, in interpreting this same statute, that "We hold that a personnel action is adverse within the meaning of the Whistleblower Act if it would be likely to dissuade a reasonable, similarly situated worker from making a report under the Act." *Montgomery County v. Park*, ---- S.W.3d ----, 2007 WL 4216605, at *3 (Tex. Nov. 30, 2007).

summary judgment evidence on this point,[6] or on any of her other arguments, the Court recommends that Premieant's motion be GRANTED as to Lampkin's Texas Health & Safety Code arguments.

## IV.  RECOMMENDATION

The Court **RECOMMENDS** that the District Court **GRANT** Premieant's Motion for Summary Judgment (Clerk's Doc. No. 19) in its entirety as to Premieant and each individually named defendant.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

---

[6] It is neither here nor there that Lampkin stated that did not report to her new location because she "did not want to go back into their work environment." *See* Lampkin Deposition at 186. The claim here is that she was retaliated against for reporting abuses *by the transfer*, not the generalized work environment (a claim, in any event, the Court rejected above).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 19th day of December, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE